UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NASSAU FINANCIAL FEDERAL CREDIT
UNION,

                Plaintiff,

                v.                                  **MEMORANDUM AND ORDER**

NATIONAL CREDIT UNION                        22-CV-39 (RPK) (SJB)
ADMINISTRATION BOARD *as Liquidating
Agent of LOMTO Federal Credit Union*, and
UNITED STATES OF AMERICA,

                Defendants.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

        Plaintiff Nassau Financial Federal Credit Union brings claims against the Board of the National Credit Union Administration ("NCUA"), a federal agency, and the United States, challenging the NCUA's settlement of a group of loans in which Nassau held a substantial participation interest. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the motion is granted.

## BACKGROUND

        The following facts are drawn from the complaint and are assumed true for purposes of this order.

        In July 2009, plaintiff entered into a loan participation agreement with the League of Mutual Taxi Owners Federal Credit Union ("LOMTO"). Compl. ¶ 13 (Dkt. #1); *see id.*, Ex. 1, at 16–40 (Dkt. #1-5). The agreement permitted plaintiff to buy participation interests in certain loans held by LOMTO. Compl., Ex. 1, at 16. It also stated that LOMTO would act in loan administration and servicing matters "as a trustee with fiduciary duties to hold the Participation Interests in the loan(s) for the benefit of the Participants." *Id*. at 25.

1

Between 2011 and 2014, LOMTO made nineteen loans totaling about $25 million to corporate entities associated with three members of the Tudor family: Adrian Tudor, Florina Tudor and Maria Tudor. Compl. ¶ 14. The loans were secured in part by 105 City of Chicago taxi medallions. *Id.* at ¶ 15. Plaintiff purchased a 90% interest in each of five of these loans, totaling about $5 million. *Id.* at ¶ 14. Other credit unions purchased interests in several of the other loans. *Ibid.* LOMTO held all remaining interests and acted as the loans' servicer. *Id*. at ¶¶ 14, 17.

In 2015, the borrowers defaulted on the loans. *Id.* at ¶ 15. They then entered into a forbearance agreement in which they agreed to secure the loans with certain commercial real estate. *Ibid*. But they defaulted again in 2016, at which point LOMTO sought to foreclose on the loan collateral in state court. *Id*. at ¶ 18.

Due to solvency concerns, the NCUA placed LOMTO under conservatorship in 2017 and into involuntary liquidation in 2018. *Id*. at ¶ 16; *see id*., Ex. 1, at 4. The NCUA became LOMTO's liquidating agent and assumed its duties as the servicer of the nineteen loans. Compl. ¶¶ 16–17; *see* 12 U.S.C. § 1787(b)(2)(A)(i).

As liquidating agent, the NCUA entered into an agreement with the borrowers to restructure those loans in 2019. Compl. ¶ 20. But in 2020, the borrowers defaulted again. *Id*. at ¶ 22. Acting as liquidating agent, the NCUA began proceedings to foreclose on the borrowers' collateral. *Id*., Ex. 1, at 5. A real estate broker appraised the real-estate portion of the borrowers' collateral at approximately $5.5 million. *Ibid*. The highest bids at auction, however, amounted to only $3.1 million. *Ibid*. Rather than continue with an overbid process, the borrowers offered to settle for $3.5 million. *Id*. at 5–6.

Plaintiff objected to the proposed settlement. Plaintiff contended that (i) the NCUA's efforts to market the real estate were insufficient, (ii) the proposed settlement failed to attribute

2

any value to the 105 taxi medallions that were part of the collateral, and (iii) the NCUA failed to provide plaintiff with "critical financial information." Compl. ¶ 24. The NCUA accepted the settlement over plaintiff's objection. *Id*. at ¶ 25.

In 2021, plaintiff sent the NCUA a proof of claim, asserting that the NCUA breached the loan participation agreement that plaintiff had entered into with LOMTO. *Id*. at ¶ 5. The NCUA disallowed the claim, and plaintiff appealed to the NCUA Board. *Id*. at ¶ 6. The NCUA Board denied plaintiff's appeal. *Ibid*. Plaintiff also sent the NCUA's Office of General Counsel a form complaint seeking relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. *Id*. at ¶ 8. The Office of General Counsel denied the claim. *Id*. at ¶ 9.

Plaintiff then filed suit in this Court. Plaintiff brings four claims: (i) breach of contract against the NCUA Board, (ii) indemnification against the NCUA Board, (iii) breach of fiduciary duties against the United States under the FTCA, and (iv) gross negligence against the United States under the FTCA. *Id*. at ¶¶ 27–57.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See* Mot. to Dismiss (Dkt. #16). They argue that plaintiff's claims against the NCUA Board should be dismissed because judicial review is only available under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq*., and plaintiff did not bring an APA claim. Mem. in Supp. of Mot. to Dismiss 14–20 (Dkt. #17). They also argue that plaintiff's claims against the United States should be dismissed because those claims are essentially contract claims that are not actionable under the FTCA. In the alternative, they argue that those claims are barred by the FTCA's discretionary-function exception and its interference-with-contract-rights exception. *Id*. at 21–31.

3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## DISCUSSION

Defendants' motion to dismiss is granted.

**I.    Plaintiff's Non-FTCA Claims Are Dismissed**

Plaintiff's breach of contract and indemnity claims are dismissed because they are not brought under the APA. As plaintiff acknowledges, "creditors must pursue their claims against covered defunct credit unions" through the "exclusive framework" established in 12 U.S.C. § 1787(b). *Perna v. Health One Credit Union*, 983 F.3d 258, 269 (6th Cir. 2020); *see* 12 U.S.C. § 1787(b)(13)(D). Under that framework, a creditor may submit a proof of claim to the NCUA Board as liquidating agent. 12 U.S.C. § 1787(b)(3)(A); *see City of New York v. FDIC*, 40 F. Supp. 2d 153, 155 (S.D.N.Y. 1999). If the NCUA Board disallows the claim, "the claimant may request administrative review of the claim . . . *or* file suit on such claim." 17 U.S.C. § 1787(b)(6)(A) (emphasis added). "If the claimant requests [administrative review] in lieu of filing" suit, the NCUA Board's "final determination . . . with respect to such claim shall be subject to judicial review under [the APA]." *Id*. § 1787(b)(7)(A). These principles bar plaintiff from bringing claims of breach of contract and indemnity against the NCUA Board. Because plaintiff sought administrative review of its breach of contract and indemnity claims, *see* Compl., Ex. 1, at 6,

4

judicial review is only available under the standards set forth in the APA, *see* 12 U.S.C. § 1787(b)(7)(A).

Plaintiff does not dispute that its breach of contract and indemnification claims must be brought under the APA, Mem. in Opp'n to Mot. to Dismiss 11–12 (Dkt. #18), but it contends that the motion to dismiss should nevertheless be denied because it would be entitled to relief under the APA, on the ground that the NCUA Board's decision was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." *Id*. at 12 (citing 5 U.S.C. § 706(2)(A)). But plaintiff did not assert this APA claim in its complaint, defendants have not briefed the claim's merits, and the administrative record has not been provided to the Court. Accordingly, the Court declines to consider the merits of plaintiff's APA claim here. *See Williams v. Rosenblatt Secs. Inc.*, 136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015) ("A plaintiff cannot amend his complaint in response to a motion to dismiss."); *Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008).

Plaintiff's breach of contract and indemnification claims are dismissed.

## II.   Plaintiff's FTCA Claims Are Dismissed

Plaintiff's claims for breach of fiduciary duty and gross negligence are also dismissed. "Absent an 'unequivocally expressed' statutory waiver, the United States . . . [is] immune from suit based on the principle of sovereign immunity." *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (citation omitted). The FTCA waives federal sovereign immunity for certain torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But as the title suggests, "claims against the United States for breach of contract are not cognizable under the" Federal Tort Claims Act. *United States v. Dorio*, 483 F. Supp. 3d 145, 156 (D. Conn. 2020); *see Davis v. United States*, 961 F.2d 53, 56 (5th Cir. 1991)

5

("The Federal Tort Claims Act does not extend subject matter jurisdiction over breach of contract claims.").

Plaintiff's FTCA claims fail because they are not cognizable as torts under New York law. In New York, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). Moreover, a plaintiff cannot "transform a simple breach of contract into a tort claim" by merely "employing language familiar to tort law." *Id.* at 194; *see Edelman v. United States*, No. 18-CV-2143 (JS) (AKT), 2020 WL 7123175, at *8 (E.D.N.Y. Dec. 4, 2020) (dismissing an FTCA claim for intentional infliction of emotional distress "[b]ecause the source of Plaintiff's claimed rights stem from a contract . . . [and] his allegations are merely a restatement of [his] breach of contract claim"). To qualify as a tort, the "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick*, 516 N.E.2d at 194; *see Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

Plaintiff's breach-of-fiduciary duty and gross-negligence claims assert that the NCUA Board "violated its duties and obligations as a fiduciary and trustee," Compl. ¶¶ 51, 56, which is not a duty that is "independent of" the loan participation agreement, *Clark-Fitzpatrick*, 516 N.E.2d at 193. "Generally, banking relationships are not viewed as special relationships giving rise to a heightened duty of care." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 158 (2d Cir. 1995); *see Banco Espanol de Credito v. Sec. Pac. Nat. Bank*, 973 F.2d 51, 56 (2d Cir. 1992). "This same principle applies to loan participation agreements, in which there is deemed to be no fiduciary relationship unless expressly and unequivocally created by contract." *Banque Arabe*, 57 F.3d at 158; *see In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d

6

Cir. 2002) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.") (citation omitted).

As a result, the only fiduciary duty under New York law that plaintiff has plausibly alleged is a contractual one, derived from the loan participation agreement providing that LOMTO would act "as a trustee with fiduciary duties to hold the Participation Interests in the loan(s) for the benefit of the Participants." Compl., Ex. 1, at 25. Because this is not "a legal duty independent of the" parties' contract, *Clark-Fitzpatrick*, 516 N.E.2d at 193, plaintiff fails to show that its claims for breach of fiduciary duty and gross negligence are cognizable as torts under New York law. *See Bayerische*, 692 F.3d at 58; *Clark-Fitzpatrick*, 516 N.E.2d at 193 (affirming the dismissal of a gross-negligence claim where "plaintiff has not alleged the violation of a legal duty independent of the contract").

Plaintiff does not alter this result by alleging that the NCUA Board breached a fiduciary duty arising from 12 C.F.R. § 701.4(b), which requires directors of federal credit unions to exercise good faith and due care. *See* Mem. in Opp'n to Mot. to Dismiss 16 n.9. Even assuming that this regulation imposed a fiduciary duty on the NCUA Board in this case, this argument is unavailing because plaintiff identifies no analogous state law imposing a similar duty on private parties. "The FTCA's 'law of the place' requirement is not satisfied by direct violations of . . . federal statutes or regulations standing alone." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988); *see FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994).

Because plaintiff's FTCA claims fail on this basis, I decline to consider defendants' alternative arguments that the claims are precluded under the FTCA's discretionary-function exception and its interference-with-contract-rights exception. *See* 28 U.S.C. § 2680(a), (h).

7

## CONCLUSION

Defendants' motion to dismiss is granted. Defendants have consented to the filing of an amended complaint setting forth claims under the APA. *See* Reply in Supp. of Mot. to Dismiss 2–3 (Dkt. #19). Accordingly, within 30 days, plaintiff may file an amended complaint that brings APA claims. Should plaintiff wish to file an amended complaint that contains non-APA claims, plaintiff shall file a motion to do so within 30 days. Any such motion shall attach the proposed amended complaint and explain why the amended complaint addresses the defects outlined in this memorandum.

SO ORDERED.

                                                                          /s/ Rachel Kovner
                                                                          RACHEL P. KOVNER
                                                                          United States District Judge

Dated:        December 20, 2022
                 Brooklyn, New York